12 CIV 7220

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JONELLE SHEPHERD, YVETTE (GARCIA) VELEZ,
and SHAREMAH LAMOTTE, on behalf
of themselves and all others similarly
situated,

                         Plaintiffs,

      -against-

JOHN B. RHEA, as Chairman of the
New York City Housing Authority, and THE
NEW YORK CITY HOUSING
AUTHORITY,

                    Defendants.
-----------------------------------------------------------------X

12-cv-_____

**CLASS ACTION
COMPLAINT**



## PRELIMINARY STATEMENT

1.        Plaintiffs, participants in the Section 8 Housing Choice Voucher Program

("Section 8" or "the Program") administered by the New York City Housing Authority

("NYCHA") for low-income tenants, bring this civil action for injunctive and declaratory relief

to challenge Defendant NYCHA's practice of failing to timely process participants' requests for

transfer vouchers.  NYCHA's failure to timely process participants' requests to transfer

apartments results in the *de facto* termination of participants' Section 8 subsides and violates the

United States Housing Act of 1937 as amended (hereinafter "the Housing Act"), 42 U.S.C.

§ 1437 et seq., its implementing regulations, and NYCHA's own policies.  Furthermore,

NYCHA has added additional requirements for Section 8 participants seeking transfer vouchers

in violation of the Housing Act and its implementing regulations which place Section 8 program participants and their families at extreme risk of eviction and homelessness.

2.          Under the Housing Act and its implementing regulations, participants have the right to move to new apartments with the continued assistance of their Section 8 subsidies after their leases expire or their current apartments are found to be ineligible to receive Section 8 subsidies due to the apartments' failure to meet Federal Housing Quality Standards (hereinafter "HQS"). Plaintiffs have requested, and are entitled to receive, Section 8 transfer vouchers based upon pending evictions from their current apartments due to expired leases or because their apartments failed their annual HQS inspections for serious hazardous conditions.

3.          NYCHA routinely delays the processing of participants' requests for transfer vouchers for months at a time. In many instances NYCHA requests unnecessary information from participants seeking transfer vouchers, and then stops processing participants' requests for transfer vouchers, unless and until participants provide the unnecessary documentation. NYCHA's policy of placing requests for transfer vouchers on indefinite hold results in the termination of participants' Section 8 vouchers without notice or the opportunity to challenge NYCHA's refusal to process their requests for a transfer voucher.

4.          These unreasonable delays violate the Housing Act and its implementing regulations resulting in the *de facto* termination of participants from the Section 8 program. Once a participant's landlord commences a summary eviction proceeding, a participant may have only a few weeks before they are scheduled for eviction. If a participant does not obtain a transfer voucher in a timely manner, they are forced to choose between homelessness and moving prior to NYCHA's approval of their new apartment. Either option puts the participant's continued eligibility for Section 8 assistance at risk, as moving to a new apartment prior to receiving

2

approval from NYCHA is grounds for termination of their Section 8 subsidy.

5.         NYCHA's unreasonable delays in processing requests for transfer vouchers for participants facing summary eviction proceedings have resulted in participants being rendered homeless prior to receiving any formal decision regarding their requests to be issued transfer vouchers.

## JURISDICTION AND VENUE

6.         This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331.

7.         Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the Defendants' principal place of business is there and because a substantial part of the acts or omissions giving rise to this lawsuit occurred in this district.

## PARTIES

8.         Defendant, THE NEW YORK CITY HOUSING AUTHORITY ("NYCHA") is a body corporate and politic established by the New York State Legislature, as set forth in Section 401 of the N.Y. Public Housing Law.  NYCHA has entered into an Annual Contributions Contract with the Secretary of HUD to administer the Section 8 Existing Housing Program.  It maintains its principal place of business at 250 Broadway, New York, New York.

9.         Defendant JOHN B. RHEA is the Chairman of NYCHA and, as such, is charged with overseeing the administration and operation of the Section 8 Leased Housing Program in New York.  Defendant Rhea's principal place of business is 250 Broadway, New York, New York.

10.        Plaintiff JONELLE SHEPHERD is a participant in NYCHA's Section 8 program. Ms. SHEPHERD is currently homeless, but has been staying with relatives at 260 East 23rd Street, Brooklyn, New York 11226.

3

11.        Plaintiff YVETTE VELEZ is a participant in NYCHA's Section 8 program.  She lives with her family at 4409 Carpenter Avenue, Apt. 2F, Bronx, New York 10470.

12.        Plaintiff SHAREMAH LAMOTTE is a participant in NYCHA's Section 8 program.  She lives at 639 Hendrix Street, Apt. 1, Brooklyn, New York 11207.

## CLASS ACTION ALLEGATIONS

13.        The named Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and as representatives of all participants in the Section 8 program administered by the Defendant NYCHA who have requested a Section 8 transfer voucher be issued on an emergency basis, and have not yet received NYCHA's approval to move into a new apartment.

14.        This class of Section 8 program participants is so numerous that joinder of all members is impracticable.

15.        There are questions of law and fact common to the class that predominate over any questions affecting only the named Plaintiffs. These common questions include, but are not limited to, whether Defendants violated Plaintiffs' rights under the Housing Act, its implementing regulations, the United States Constitution, and NYCHA's Leased Housing Directives by failing to timely issue transfer vouchers, denying requests without giving participants adequate notice and an opportunity to be heard, and failing to schedule inspections of participants' prospective transfer apartments in a reasonable time.

16.        The claims of the individually named Plaintiffs are typical of the claims of all class members.

17.        The named Plaintiffs will fairly and adequately represent the interests of all members of the class.  Each has the requisite personal interest in the outcome of this case.  Like

4

all Section 8 voucher program participants awaiting processing of their requests for transfer vouchers, Plaintiffs seek the immediate issuance of their transfer vouchers, and timely processing of their transfer rental packages. The named Plaintiffs have no interest antagonistic to others in the class. All class members are represented by The Legal Aid Society and Latham & Watkins LLP, counsel experienced in class-action litigation generally, and specifically in litigation involving the rights of low-income tenants.

18.          The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to the practices at issue in this action. Separate actions would, as a practical matter, be dispositive of the interests of other members of the class and would substantially impair or impede their ability to protect their own interests.

19.          The Defendants have acted and will act in a manner generally applicable to each member of the class of tenants, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

## STATUTORY AND REGULATORY BACKGROUND

**The Housing Act and Its Implementing Regulations**

20.          Congress enacted the United States Housing Act of 1937 ("the Housing Act") to remedy the acute shortage of decent, safe, and sanitary dwellings for families of low income. See 42 U.S.C. § 1437. Section 8 of the Housing Act, which created the Housing Choice Voucher program was added in 1974, and provides:

> For the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with the provisions of this

5

Section.

42 U.S.C. § 1437f(a).

21.        Section 8 authorizes the Secretary of Housing and Urban Development (hereinafter "HUD") to enter into annual contributions contracts with public housing agencies (hereinafter "PHAs") pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units. See 42 U.S.C. § 1437f(b)(1).

22.        Pursuant to this authority, the Secretary of HUD has entered into an Annual Contributions Contract with NYCHA to administer a Section 8 Existing Housing program for tenant-based, subsidized, low-income housing in New York City.  In administering that program, NYCHA is required to comply with federal regulations governing the Section 8 Existing Housing program. See 24 C.F.R. § 982.151(a).

23.        The Section 8 program provides federally funded rent subsidies to enable low income tenants to rent privately owned units, by paying what is generally the difference between tenants' rents and 30% of tenants' household incomes.  42 U.S.C. § 1437a (a)(1); 24 C.F.R. § 982.505.

24.        Under this program, originally called the "finders keepers" or "certificate" program, families selected their own housing, and the subsidy followed the families when the families moved. See HUD, Housing Choice Voucher Guidebook § 1.2.

25.        Participants in the Section 8 Existing Housing program are responsible for selecting their own apartments.  Once an apartment has been selected, the Section 8 participant must submit to the PHA a request for lease approval and a copy of the proposed lease. See 24 C.F.R. § 982.302.

26.        The PHA must ensure the lease meets HUD requirements and the apartment

passes a Housing Quality Standards inspection.  See 24 C.F.R. §§ 982.305, 982.308.  If the

apartment and the lease are approved, the PHA and the owner execute a Housing Assistance

Payments (HAP) contract wherein the PHA agrees to make payments to the owner on behalf of

the family.  See 24 C.F.R. § 982.305.

27.        An owner is not required to renew the assisted lease of a Section 8 tenant.

28.        When a transfer or rental package is submitted to a PHA for approval, the PHA

must inspect the apartment within a reasonable time.  See 42 U.S.C. § 1437(f)(o)(8)(c).

29.        Expiration of a tenant's lease does not terminate the tenant's participation in the

Section 8 program.  If the family chooses to move or is forced to move out of the leased unit, the

family may move to another unit with continued assistance so long as the family remains eligible

for the Section 8 program.

30.        The United States Housing Act, 42 U.S.C § 1437f(r) provides in pertinent part,

> **(1) In general.— (A)** Any family receiving tenant-based
> assistance under subsection (o) of this section may receive such
> assistance to rent an eligible dwelling unit if the dwelling unit to
> which the family moves is within any area in which a program is
> being administered under this section.

31.        Participants in the program may move to new apartments under a variety of

circumstances and continue to receive a Section 8 housing subsidy.  A participant family may

move into a new apartment with their Section 8 subsidy if:

> (1) The assisted lease for the old unit has terminated.  This
> includes a termination because:
>
>> (i) The PHA has terminated the HAP contract for the
>> owner's breach; or
>> (ii) The lease has terminated by mutual agreement of the
>> owner and the tenant.

7

(2) The owner has given the tenant a notice to vacate, or has commenced an action to evict the tenant, or has obtained a court judgment or other process allowing the owner to evict the tenant.

(3) The tenant has given notice of lease termination (if the tenant has a right to terminate the lease on notice to the owner, for owner breach or otherwise).

24 C.F.R. § 982.314(b).

32.        A participant may move apartments multiple times with continued Section 8 assistance. See 24 C.F.R. § 982.314(c)(1). The PHA may establish policies limiting moves by participants during initial lease terms or limiting participants to one move during any one-year period. See 24 C.F.R. § 982.314(c)(2). However, "the PHA may not directly or indirectly reduce the family's opportunity to select among available units" except to further court-ordered desegregation goals, or to limit the use of Section 8 assistance to eligible housing units. 24 C.F.R. § 982.353(f).

33.        The PHA may deny the participant permission to move to another unit only if the PHA does not have sufficient funding to provide continued assistance to the participant or if the PHA has other grounds for denial or termination of assistance. See 24 C.F.R. § 982.314(e).

34.        The grounds for denial or termination of assistance are listed in 24 C.F.R. § 982.552.

35.        A PHA may deny or terminate assistance to a family based only on certain actions or inaction by the family, such as the family's serious violation of the lease, the family's failure to submit required information, the family's failure to submit evidence of immigration status, or certain other enumerated grounds. See 24 C.F.R. § 982.552.

36.        If a PHA decides to terminate a participant's Section 8 subsidy, it must give the

8

participant an opportunity for an informal hearing to consider whether the PHA's decision was in accordance with the law before the assistance may be terminated. <u>See</u> 24 C.F.R. § 982.555(a)(2). Where a hearing is required, it must be provided expeditiously at the request of the family. <u>See</u> 24 C.F.R. § 982.555(c)(2).

**NYCHA Leased Housing Directives**

37.        NYCHA administers the United States' single largest Section 8 program, with approximately 94,400 active Housing Choice Vouchers. <u>See</u> OMB No. 2577-0226.

38.        NYCHA Leased Housing Directive (hereinafter "LHD") #99-17 sets forth NYCHA's procedures for processing Section 8 program participants' requests for transfer vouchers. Participants must submit a completed transfer request to NYCHA in person, at a NYCHA Customer Contact Center, or in writing to NYCHA's correspondence unit.

39.        NYCHA then divides participants' requests for transfer vouchers into two categories: emergency requests and non-emergency requests. LHD #06-9 designates emergency transfer categories. Pursuant to LHD #06-9 requests for transfer vouchers based upon hazardous HQS violations, court action, reasonable accommodations, domestic violence, and witness intimidation are to be processed on an emergency basis.

40.        LHD #01-24 provides that requests for transfer vouchers based upon the threat of eviction are to be considered emergency requests and processed on an expedited basis. Under this directive, all program participants seeking transfer vouchers on an emergency basis must be scheduled for transfer briefings within six weeks of NYCHA's approval of their requests for transfer vouchers.

41.        LHD #02-6 refines NYCHA's policy regarding the issuance of transfer vouchers

on an emergency basis. LHD #02-6 states that a program participant's request for a transfer voucher shall be designated an emergency request if the tenant initially submits a "notice of termination" of their tenancy and subsequently submits proof of the commencement of a holdover eviction proceeding. Additionally, LHD #02-6 requires NYCHA staff to notify the participant whether their request for a transfer voucher has been approved or denied within two weeks of receiving the request, and to schedule the participant for a briefing to receive their transfer voucher within four weeks of NYCHA's approval of the request.

**New York Landlord-Tenant Law**

42.       As a general rule, landlords in New York have no obligation to renew a tenant's lease after it has expired. Thus, in most housing in New York, a landlord may, with very limited exceptions, refuse to renew a tenant's lease for any reason or no reason at all, and commence a summary holdover proceeding to evict the tenant.

43.       Although tenants in housing subject to regulation under the Rent Stabilization Law and the Rent Control Law may have a right to receive a renewal lease, many of the apartments in New York City are unregulated.

44.       If a landlord accepts rent from a tenant after their lease expires, a month-to-month tenancy is created as a matter of law. N.Y. Real Prop. L. § 232-c.

45.       A landlord may refuse to renew an unregulated, month-to-month tenancy. However, to terminate a month-to-month tenancy, a landlord must give the tenant a 30-day notice terminating their month to month tenancy. N.Y. Real Prop. L. § 232-a.

46.       If a tenant fails to move out of an apartment after the expiration of their tenancy, a landlord may bring a summary holdover proceeding in the Housing Part of the Civil Court of the City of New York pursuant to N.Y. Real Prop. Acts. § 711(1) to evict the tenant. Because a

landlord may refuse to renew an unregulated tenancy for any reason, these proceedings are frequently referred to a "no-grounds" holdovers.

47.     Summary holdover proceedings are subject to strict statutory time limits: the holdover petition must be noticed to be heard within five to twelve days of service and adjournments are limited to "not more than ten days, except by consent of all parties." N.Y. Real Prop. Acts. § 745.

48.     Virtually all no grounds holdovers are resolved by a negotiated settlement where the tenant consents to a judgment of possession being entered in favor of the landlord, in exchange for receiving time to move. These settlements provide for the issuance of a warrant of eviction but stay the tenant's eviction for a short period of time.

49.     A tenant may request the court grant them a further stay to find a new apartment however, pursuant to N.Y. Real Prop. Acts. § 753(1), a judge may not extend the stay of execution of the warrant of eviction for more than six months.

## FACTS PERTAINING TO NAMED PLAINTIFFS

### Jonelle Shepherd

50.     Jonelle Shepherd and her children were evicted from their home while waiting for NYCHA to process her request for a transfer voucher. Ms. Shepherd has been waiting more than a year for NYCHA to process her request to be issued a transfer voucher.

51.     Ms. Shepherd is a single mother of two young children and has been a recipient of a Section 8 subsidy since 2009.

52.     Until she was evicted in March 2012, Ms. Shepherd lived in an apartment in a four-family house in Brooklyn. When her lease for the apartment expired her landlord declined to renew the lease. On May 31, 2011, Ms. Shepherd's landlord sent her a 30-day notice to vacate

the premises. When Ms. Shepherd did not vacate the apartment, her landlord commenced a summary holdover proceeding in the Civil Court of Kings County seeking her eviction.

53.       On July 11, 2011, Ms. Shepherd, without an attorney, entered into a stipulation settling the holdover proceeding. The stipulation provided for a judgment of possession in favor of Ms. Shepherd's landlord and issuance of a warrant of eviction. However, the eviction was stayed through October 31, 2011, provided Ms. Shepherd paid her tenant share of the monthly rent.

54.       On July 25, 2011, Ms. Shepherd went to a NYCHA Customer Contact Center and submitted a request for an emergency transfer voucher.

55.       Along with her request for a transfer voucher, Ms. Shepherd submitted court documents from the pending holdover proceeding and received a receipt.

56.       Ms. Shepherd attempted to follow up on the status of her request for a transfer voucher several times during the following months by calling NYCHA's central Customer Contact Center.

57.       Ms. Shepherd originally submitted her annual recertification package on November 18, 2011, but was later informed by the NYCHA customer service representative that NYCHA had no record of having received her annual recertification package. On January 5, 2012, Ms. Shepherd submitted another annual recertification package. In the first week of February 2012, Ms. Shepherd received a letter from NYCHA dated February 3, 2012, stating she had been recertified, and setting the tenant's portion of the monthly rent at $157.00.

58.       On November 10, 2011, Ms. Shepherd moved by order to show cause to extend her time to move out of her apartment. Her landlord agreed in a stipulation to extend the stay of the warrant of eviction until January 31, 2012. However, Ms. Shepherd's landlord indicated she

would not agree to any further stays. The stipulation indicated that Ms. Shepherd had paid her share of the rent through October and provided that the continued stay of the warrant of eviction was conditioned on her payment of her share.

59.          In February 2012, after the stay of the eviction had expired, Ms. Shepherd made an *ex parte* application in Housing Court for a further stay of execution of the warrant. Ms. Shepherd's application was denied because the court lacked the authority under N.Y. Real Prop. Acts. § 753(1) to extend the stay of execution of a warrant of eviction more than six months.

60.          On March 6, 2012, Ms. Shepherd and her children were evicted from their home. She had still not received a decision on her July 25, 2011, emergency request for a transfer voucher.

61.          Ms. Shepherd, now staying with family, notified NYCHA of the eviction and arranged to have her mail forwarded.

62.          Ms. Shepherd was told by NYCHA that she needed to get a notarized letter from her erstwhile landlord attesting to the fact that she had been current with her tenant share payments in order to receive her transfer voucher.

63.          Due to a dispute regarding a shared electricity meter in the old apartment, and the fact that her prior landlord had recently evicted her, Ms. Shepherd was unable to obtain the notarized letter NYCHA sought. On March 29, 2012, Ms. Shepherd brought this dispute to NYCHA's attention, but NYCHA continued to refuse to process her request for a transfer voucher.

64.          On April 18, 2012, NYCHA mailed Ms. Shepherd a letter stating that "Federal Law and Regulations require that we verify your income to determine your eligibility to remain in the Section 8 Program and your share of the rent. To complete this review, the following is

13

required . . . PLEASE SUBMIT PROOF OF RENT/RENT RECEIPTS FROM 6/200 to 2/29/12."

65.         Ms. Shepherd was unable to provide her past rent receipts due to the fact that she was evicted and lost much of her documentation in the process.

66.         On May 10, 2012, Ms. Shepherd brought NYCHA a history of the holdover proceedings which demonstrates she remained current with her tenant portion throughout, as all of the stays through January 31, 2012, were conditioned upon her payment of her monthly share of the rent.

67.         However, as recently as August 2012, Ms. Shepherd has been informed by the NYCHA Customer Contact Center that NYCHA is no longer processing her request for a transfer voucher and that she is in danger of losing her Section 8 voucher.

**Yvette Velez**

68.         Ms. Velez submitted a request for a transfer voucher on May 17, 2012, and is still waiting for a determination from NYCHA regarding her request for a transfer voucher.

69.         Ms. Velez lives in an apartment in a two-family house in the Bronx with her three adult children. She has received a Section 8 subsidy since 1994.

70.         As the result of a constant leak in her bathroom, Ms. Velez's apartment has become infested with mold, which has aggravated her son's medical conditions.

71.         In April 2012, Ms. Velez's landlord refused to renew her month-to-month tenancy and sent her a 30-day notice of termination.

72.         On May 17, 2012, Ms. Velez submitted a request for a transfer voucher, based upon her landlord's termination of her month to month tenancy, and the conditions in her apartment. Ms. Velez submitted the request in person at NYCHA's Bronx Customer Contact

Center. The NYCHA customer service representative gave Ms. Velez a receipt which designated her transfer request as an emergency.

73.         During the first week of June 2012, Ms. Velez went to the Bronx Customer Contact Center to check on the status of her request. Ms. Velez was informed by a customer service representative that until her landlord commenced eviction proceedings NYCHA could not expedite her request for a transfer voucher.

74.         Ms. Velez's landlord subsequently commenced a holdover eviction proceeding against Ms. Velez. On July 10, 2012, Ms. Velez submitted a copy of the holdover petition, the postcard she had received from the Civil Court, and the slip of paper she had been given in court reminding her of the date to which her case had been adjourned. Ms. Velez received a receipt from NYCHA's customer service representative indicating she had submitted documents.

75.         On August 7, 2012, while appearing *pro* se, Ms. Velez entered into a stipulation settling the holdover proceeding. The stipulation provided for a judgment of possession in favor of the landlord and the issuance of a warrant of eviction, and the execution of the warrant of eviction was stayed through February 7, 2013.

76.         On August 9, 2012, NYCHA sent Ms. Velez a letter requiring her to "produce all documents listed on the reverse side of this letter by 8/19/12," but the reverse side was blank. Ms. Velez has received no determination of her request, nor has NYCHA indicated what documentation it still needs before it acts on the request.

**Sharemah Lamotte**.

77.         Sharemah Lamotte has been seeking an emergency transfer voucher since March 2012, when her landlord commenced a holdover proceeding against her. However, to this date, NYCHA has not processed her request.

78.         Ms. Lamotte lives in a two-family house in Brooklyn.  She has been receiving a

Section 8 subsidy since 1992.  Recently her six year-old grandson, Unique, has been staying with

her.

79.         In December 2011, she received a 30-day notice of termination of her month-to-

month tenancy and in February, her landlord commenced a holdover proceeding against her in

the Civil Court of Kings County.

80.         On March 20, 2012, Ms. Lamotte brought the holdover petition to NYCHA's

Brooklyn Customer Contact Center and submitted a request for a transfer voucher. Ms. Lamotte

was informed by the customer service representative that it could take up to six months for her to

receive her transfer voucher.

81.         On March 23, 2012, without an attorney, Ms. Lamotte entered into a stipulation

settling the holdover proceeding.  The stipulation provided for a judgment of possession in favor

of Ms. Lamotte's landlord and the issuance of a warrant of eviction.  However, the execution of

the warrant of eviction was stayed through June 23, 2012 for Ms. Lamotte to find another

apartment.  As part of the stipulation, Ms. Lamotte's landlord stated that she owed no portion of

her tenant share and that it waived any right to collect her tenant portion through June 30, 2012.

82.         After more than six weeks had passed without receiving any update on the status

of her request, Ms. Lamotte called NYCHA's central Customer Contact Center and was

informed that NYCHA had no record of her March 20, 2012 transfer request.

83.         On June 14, 2012, Ms. Lamotte submitted a second request for an emergency

transfer voucher.  According to the customer receipt that she was issued that day, Ms. Lamotte

provided NYCHA a copy of the 30-day notice of termination, the notice of petition and petition,

and the March stipulation.

84.          Despite the fact the stipulation clearly states Ms. Lamotte does not owe any of her tenant's portion of the monthly rent, on July 5, 2012, NYCHA sent Ms. Lamotte a notice directing her to provide a notarized statement from her landlord declaring Ms. Lamotte did not owe any rental arrears and to provide evidence of legal guardianship for her grandson, whom she sought to add to her household composition.

85.          It took Ms. Lamotte over a month to obtain the required letter from her landlord, which she provided to NYCHA on August 8, 2012. On August 8, 2012, Ms. Lamotte notified NYCHA she would abandon her request to have her grandson added to her household composition, as she does not have legal custody of her grandson.

86.          Ms. Lamotte was informed that in order to request a transfer voucher without adding her grandson to her household composition she would have to submit a new transfer request.

87.          On August 16, 2012, Ms. Lamotte submitted a new request for a transfer voucher, this time without requesting to add her grandson to her household composition.  He has since moved back with his mother.

88.          NYCHA has taken no action on Ms. Lamotte's August 16, 2012, request, and closed her previous requests.

89.          Ms. Lamotte is still facing eviction from her current apartment, but the execution of the warrant of eviction is currently stayed through December 11, 2012.

### CLASS-WIDE ALLEGATIONS

90.          NYCHA routinely delays processing participants' emergency requests for transfer vouchers for months at a time, requests irrelevant and unnecessary information from participants seeking emergency transfer vouchers, and often denies requests for transfer vouchers with no

notice or opportunity to challenge NYCHA's determination. NYCHA's unreasonable delays in processing requests for transfer vouchers from participants facing summary eviction proceedings have resulted in participants being rendered homeless prior to receiving any formal decision regarding their requests from NYCHA. Defendant Rhea, as Chairman of NYCHA, is responsible for NYCHA's acts and omissions as set forth in this Complaint.

91.         Participants who have requested transfer vouchers must wait for a NYCHA employee to process their transfer request through NYCHA's automated case management system. Participants' requests for transfer vouchers must first be scanned into the case management system.

92.         Many requests or supporting documents are lost before they are even entered into the system. Even when all of the documents are entered into the system, NYCHA often fails to recognize the documents while processing the requests.

93.         Only once requests for transfer vouchers are processed and participants are determined to be eligible for transfer vouchers are participants scheduled for transfer briefings. Participants may not begin their search for new housing until they attend a transfer briefing and receive a transfer voucher.

94.         While NYCHA's stated policy is to process all emergency requests for transfer vouchers within six weeks of its receipt of such a request, participants usually have to wait many months – sometimes indefinitely – to receive a transfer voucher, even when the tenant is threatened with eviction in a pending summary holdover proceeding.

95.         Instead of processing requests for transfer vouchers expeditiously, NYCHA has implemented an arbitrary policy of requiring participants who are facing eviction in summary "no grounds" holdover proceedings to prove they remain current in the payment of the tenant's

portion of their monthly rent during the pendency of the eviction proceeding.

96.        This additional requirement, not required by regulations or NYCHA's LHDs, delays the issuance of transfer vouchers for months at a time and sometimes indefinitely.

97.        After a tenant submits a request for a transfer voucher, NYCHA routinely sends a letter requiring them to provide proof they are current with their portion of the rent even though such evidence is irrelevant to a tenant's eligibility for a transfer voucher.  If a tenant does not provide the requested proof – sometimes a notarized letter from the landlord that is trying to evict them – their request for a transfer voucher is denied.  Often it is very difficult for a tenant to get a landlord who is trying to evict them to assist them with a notarized letter.

98.        The notices requesting proof of payment of rent do not state a request for a transfer voucher will be denied if the information is not provided.

99.        These notices do not indicate any type of procedure by which participants may provide an explanation for their inability to provide proof of ongoing payment of the tenant's portion or challenge the denial of their request.

100.       In the rare event a tenant receives a notice formally stating their request for a transfer voucher has been denied, the notice provides none of the information required by 24 C.F.R. § 982.555 regarding the procedures for challenging the denial of their request for a transfer voucher.

101.       After a participant receives the transfer voucher they must undertake the process of finding a landlord who is willing to participate in the Section 8 program.  Once a participant has found a landlord who is willing to rent to them they must then wait for NYCHA to inspect the new apartment before approving it.

102.       Despite NYCHA's statutory obligation pursuant to 42 U.S.C. § 1437(o)(8)(C) to

inspect apartments within a reasonable time of its receipt of a transfer rental package, participants frequently wait weeks and even months to have prospective apartments inspected.

103.    Even once apartments have passed inspection, NYCHA frequently delays weeks and even months before giving participants permission to move into the apartments.

104.    Federal regulations contemplate no delay, additional qualifications, or waiting lists in the transfer voucher process, and instead guarantee participants the right to move apartments so long as they remain eligible to receive a Section 8 subsidy.

105.    NYCHA's unreasonable delay in processing transfer voucher requests violates the Housing Act and its implementing regulations. NYCHA's actions amount to the *de facto* termination of participants from the Section 8 program. Once a participant's landlord commences a summary eviction proceeding a participant may have only a few weeks before they are scheduled for eviction. If a participant does not obtain a transfer voucher in a timely manner, they are forced to choose between homelessness and moving to a new apartment prior to NYCHA's approval of their new apartment. Both options put their continued eligibility for the Section 8 subsidy at risk. Moving to a new apartment prior to receiving approval places a participant at risk of having their Section 8 subsidy terminated for moving without permission.

## CLAIMS FOR RELIEF

## FAILURE TO PROCESS REQUESTS FOR EMERGENCY TRANSFER VOUCHERS

### FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

106.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

107.    Defendants NYCHA and Rhea routinely fail to process Section 8 program participants' requests for transfer vouchers. Their actions result in the *de facto* termination of participants' Section 8 subsidies, without prior notice, and without the opportunity for a pre- or

post-termination hearing.

108.          This termination of a participant's Section 8 eligibility without a pre-termination

hearing violates the violates 42 U.S.C. § 1437d(k)(1) and (2), 42 U.S.C. § 1437c(d)(6) and (l)(1),

42 USC § 1437f(o)(5)(B), 42 USC § 1437f(o)(10)(D), 24 C.F.R. § 982.555(a)(6), 24 C.F.R. §

982.552 (c) & (d),  24 C.F.R. § 982.555(c)(2), 24 C.F.R. § 903.7(f),  24 C.F.R.§982.516, and the

Due Process Clause of the Fourteenth Amendment to the United States Constitution for which a

cause of action is created by 42 U.S.C. § 1983.

109.          As a result of NYCHA's policies and practices, Plaintiffs have suffered and

continue to suffer damages including the threat of eviction from their homes or continued

homelessness.

110.          Plaintiffs bring this claim under 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION: PREEMPTION

111.          Plaintiffs incorporate the above paragraphs as if fully set forth herein.

112.          Defendant NYCHA routinely fails to process Section 8 program participants'

requests for transfer vouchers in a timely manner.

113.          NYCHA's failure to timely process Section 8 program participants' requests for

transfer vouchers violates 42 U.S.C. § 1437d(k)(1) and (2), 42 U.S.C. § 1437c(d)(6) and (l)(1),

42 USC § 1437f(o)(5)(B), 42 USC § 1437f(o)(10)(D), 24 C.F.R. § 982.555(a)(6), 24 C.F.R. §

982.552 (c) & (d),  24 C.F.R. § 982.555(c)(2), 24 C.F.R. § 903.7(f),  and 24 C.F.R.§ 982.516,

and stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of the Housing Act and its implementing regulations.

114.          Plaintiffs bring this claim pursuant to the Supremacy Clause of the United States

Constitution.

21

## INADEQUATE AND DEFECTIVE NOTICE OF DENIAL OF TRANSFER REQUESTS

### THIRD CAUSE OF ACTION: 42 U.S.C. § 1983

115.      Plaintiffs incorporate the above paragraphs as if fully set forth herein.

116.      Defendants NYCHA and Rhea deny participants' requests for transfer vouchers without providing participants with adequate notice or an opportunity to challenge NYCHA's denial of the request.

117.      This practice violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C.§ 1437d(k), and 24 C.F.R. § 982.555.

118.      As a result of NYCHA's policies and practices, Plaintiffs have suffered and continue to suffer damages including the threat of eviction from their homes or continued homelessness.

119.      Plaintiffs bring this cause of action pursuant to 42 U.S.C. § 1983.

### FOURTH CAUSE OF ACTION: PREEMPTION

120.      Plaintiffs incorporate the above paragraphs as if fully set forth herein.

121.      Defendant NYCHA denies participants' requests for transfer vouchers without providing participants adequate notice, or an opportunity to challenge NYCHA's denial of the request.

122.      This practice violates 42 U.S.C.§ 1437d(k) and 24 C.F.R. § 982.555 and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the Housing Act.

123.      Plaintiffs bring this claim pursuant to the Supremacy Clause of the United States Constitution.

22

## IMPERMISSIBLE ADDITIONAL REQUIREMENTS FOR TRANSFERS

### FIFTH CAUSE OF ACTION: PREEMPTION

124.        Plaintiffs incorporate the above paragraphs as if fully set forth herein.

125.        Defendant NYCHA's policy of requiring Section 8 program participants seeking

emergency transfer vouchers to prove they are current in the payment of the tenant portion of the

monthly rent prior to NYCHA's processing of their requests for transfer vouchers violates 42

U.S.C. § 1437f(r) and 24 C.F.R. § 982.314, and stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of the Housing Act.

126.        Plaintiffs bring this claim pursuant to the Supremacy Clause of the United States

Constitution.

## DELAYS IN NEW APARTMENT APPROVALS

### SIXTH CAUSE OF ACTION: PREEMPTION

127.        Plaintiffs incorporate the above paragraphs as if fully set forth herein.

128.        Defendant NYCHA's failure to schedule inspections in a reasonable time, once a

transfer rental package is submitted by a program participant, violates 42 U.S.C. § 1437o(8)(c)

and is in conflict with the Housing Act and its implementing regulations, and stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of the statute.

Plaintiffs bring this claim pursuant to the Supremacy Clause of the U.S. Constitution.

## PENDENT STATE CLAIMS

### SEVENTH CAUSE OF ACTION: DECLARATORY RELIEF

129.        Plaintiffs incorporate the above paragraphs as if fully set forth herein.

130.        Defendant NYCHA's failure to timely issue transfer vouchers, provide

participants with notice of the status of their transfer requests, and schedule inspections of the prospective transfer apartments in a reasonable time violates the Housing Act, its implementing regulations, NYCHA's Section 8 Housing Choice Voucher program administrative plan, LHD No. 99-17, LHD No. 01-24, LHD No. 02-6, LHD No. 06-8, LHD No. 06-9, and LHD No. 07-16. Plaintiffs are entitled to declaratory and injunctive relief with respect to these violations.

131.          As a result of NYCHA's policies and practices, Plaintiffs have suffered and continue to suffer damages including the threat of eviction from their homes.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court:

(1)          enter a final judgment on Plaintiffs' First, Second, and Seventh Causes of Action pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1337 declaring Defendants' failure to provide Section 8 transfer vouchers to participants who are seeking to move apartments because of impending eviction proceedings arising through no fault of their own and who are in compliance with program requirements violates the Housing Act, 42 U.S.C. § 1401, et seq., 24 C.F.R. § 982.1(b)(2), 24 C.F.R. § 982.314(b)(2), and 24 C.F.R. § 982.314(e), and the Fourteenth Amendment to the U.S. Constitution,

(2)          enter final judgment of Plaintiffs' First, Second, and Seventh Causes of Action permanently enjoin NYCHA from putting on a waiting list the names of Section 8 participants who seek transfer vouchers based upon pending eviction proceedings, or serious hazardous conditions in their apartments which resulted in the apartment failing the annual HQS inspection, and who are in compliance with program requirements;

(3)          enter final judgment on Plaintiffs' First, Second, and Seventh Causes of Action

issuing a permanent injunction requiring Defendants to develop a plan and promulgate procedures, satisfactory to this Court, to ensure NYCHA complies with the implementing regulations for the Section 8 Program with respect to the timely provision of Section 8 transfer vouchers to participants who seek to move apartments based upon pending eviction proceedings, or serious hazardous conditions in their apartments which resulted in the apartment failing the annual HQS inspection, and who are in compliance with program requirements .

(4)     enter a final judgment on Plaintiffs' First, Second, and Seventh Causes of action issuing a permanent injunction requiring NYCHA to issue Section 8 transfer vouchers to Plaintiffs forthwith;

(5)     enter a final judgment on Plaintiffs' Second, Third, Fourth and Seventh Causes of Action issuing a permanent injunction requiring NYCHA to develop a plan and promulgate procedures, satisfactory to this Court, to ensure that participants whose requests for transfer vouchers have been denied receive adequate notice and an expeditious hearing to challenge the denial;

(6)     enter final judgment pursuant to Plaintiffs' Fifth, and Seventh Causes of Action permanently enjoining NYCHA from making the issuance of Section 8 transfer vouchers contingent upon participants producing documentation not necessary for NYCHA's determination of participants' eligibility to move with the continued assistance of their Section 8 vouchers pursuant to 24 C.F.R. § 982.314(b);

(7)     enter a final judgment on Plaintiffs' Sixth and Seventh Causes of Action issuing a permanent injunction requiring NYCHA to inspect the apartments program participants seek NYCHA approval to rent in a reasonable time as required by 42 U.S.C. § 1437(o)(8)(c);

(8)     award the Plaintiffs reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

(9)     grant such other and further relief as the Court may deem just and proper.


Dated:          September 24, 2012
                New York, New York


                                        LATHAM & WATKINS LLP

                                        _____

                                        Christopher R. Harris, Esq.
                                        Paul A. Serritella, Esq.
                                        Gina R. Gencarelli, Esq.
                                        885 Third Avenue
                                        New York, New York 10022

                                        Telephone: (212) 906-1200
                                        Email: christopher.harris@lw.com
                                               paul.serritella@lw.com
                                               gina.gencarelli@lw.com

                                        THE LEGAL AID SOCIETY

                                        Steve Banks, Esq.
                                        Adriene Holder, Esq.
                                        Ellen Davidson, Esq.
                                        Judith Goldiner, Esq.
                                        Sebastian Riccardi, Staff Attorney
                                        Kathleen Brennan, Staff Attorney

                                        199 Water Street
                                        New York, New York 10038

                                        Telephone: (212) 577-3300
                                        Email: JGoldiner@legal-aid.org
                                               SRiccardi@legal-aid.org
                                               KMBrennan@legal-aid.org


                                        *Counsel for Plaintiffs*