UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

JONELLE SHEPARD, YVETTE (GARCIA) VELEZ, :
AND SHAREMAH LAMOTTE, :
on behalf of themselves and all others :
similarly situated, :
  :
      **Plaintiffs,** :
  :   **OPINION AND ORDER**
   **- against -** :
  :   **12-CV-7220 (RLE)**
JOHN B. RHEA, et al., :
  :
      **Defendants.** :

―――――――――――――――――――――――――――

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.   INTRODUCTION

Plaintiffs Jonelle Shepard, Yvette Garcia Velez, and Sharemah Lamotte (collectively

"The Named Plaintiffs"), participants in the New York City Housing Authority ("NYCHA")

Section 8 Housing Choice Voucher Program ("the Program"), commenced this action on

September 25, 2013, as a putative class action under Federal Rule of Civil Procedure 23, on

behalf of themselves and as representatives of all participants in the Program who have

requested a Section 8 transfer voucher to be issued on an emergency basis and have not yet

received NYCHA's approval to move into a new apartment. (Compl. ¶¶ 1, 13.) The Named

Plaintiffs claimed that NYCHA's failure to timely process Section 8 Housing Choice Voucher

Program Participants' requests to transfer apartments violated the Due Process Clause of the

Fourteenth Amendment of the United States Constitution, the United States Housing Act of 1937

("the Housing Act") and its implementing regulations, and NYCHA's own policies, and sought

injunctive and declaratory relief. (Compl. ¶¶ 1, 15.) On May 13, 2014, the Parties consented to

conduct all proceedings before the undersigned. (Docket No. 37.)

Before the Court is a request for final approval of the class action settlement.

Having considered the request for final approval of the class action settlement and the oral argument presented at the April 21, 2014 fairness hearing, and the complete record in this matter, for the foregoing reasons, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

The Court certifies the following class under Federal Rule of Civil Procedure 23(a) and (b)(3), for settlement purposes (the "Rule 23 Class Members"):

(1) all participants in the Program ("Tenants") who request or have requested emergency transfers due to either an un-remedied life-threatening or designated hazardous housing quality standard ("HQS") violation or a holdover proceeding in Housing Court based on a landlord's choice not to renew a lease.

## II.   BACKGROUND

At issue in this action were the administrative procedures underlying NYCHA's Section 8 voucher program.  These vouchers provide "tenant-based" rental assistance to low-income individuals. Section 8 voucher recipients are generally free to change apartments, and landlords are generally free not to renew their tenancy. When recipients find a new place to live, NYCHA is required by federal law and its own internal procedures to take steps to transfer the Section 8 assistance from the prior landlord to the new landlord. Prior to the commencement of his proceeding, NYCHA is alleged to have delayed processing participants' emergency transfer requests for months at a time, requested irrelevant information from participants seeking emergency transfer vouchers, and denied requests for transfer vouchers with no notice or opportunity to challenge the decision. Plaintiffs in this action are individuals who: 1) have requested or will request an emergency transfer voucher because of un-remedied life-threatening

violations; or 2) have requested or will request an emergency transfer voucher because of a holdover proceeding in Housing Court based on a landlord's choice not to renew a lease.

After exchanging document discovery and engaging in extensive negotiations, including negotiations mediated by the Court, the Parties reached a settlement. (Doc. No. 35 at 5.)  The terms of the settlement include new policies and procedures with respect to emergency transfer requests to 1) un-remedied life-threatening hazardous HQS violations, or 2) holdover proceedings in Housing Court based on a landlord's choice not to renew a lease. The terms also provide for a monitoring by an independent auditor.  Under the terms of the settlement, a tenant seeking an emergency transfer voucher based on a holdover action shall demonstrate eligibility for a voucher by providing a notice of petition and petition or a 30-day termination notice, along with the written transfer request form.  A tenant seeking an emergency transfer voucher because of an HQS violation will not need to provide any information in addition to the written transfer request form.  NYCHA will not require a tenant to establish that he or she is a tenant in good standing in any other way as a condition of issuing an emergency transfer voucher.  A tenant's request for an emergency transfer voucher will not be denied or delayed for failure to complete annual re-certification unless that tenant's subsidy has been terminated.

Within three weeks of receipt of a request for an emergency transfer voucher, NYCHA will issue a written letter either 1) scheduling an appointment for the tenant to receive the transfer voucher; or 2) denying the tenant's request for an emergency transfer voucher; or 3) requesting additional information.  If NYCHA denies the request, the written denial shall include the basis for denying the tenant's request.  Such denial shall not be a basis for denial of a new emergency transfer voucher request supported by proper documentation.  If NYCHA approves the request, it will schedule the tenant to attend any briefing required to receive the voucher and

3

transfer package within three weeks of NYCHA's letter scheduling the briefing.  If NYCHA has grounds for termination of the subsidy of a tenant seeking an emergency transfer, it will process the transfer request unless and until the tenant's subsidy is terminated.  If a tenant's written request for an emergency transfer voucher lists the name and date of birth of a person other than those in the currently authorized household composition, and the person passes a criminal background check, NYCHA will issue a transfer voucher with the person included in the household composition.  If the tenant seeks to remove a person from the household composition at the time the tenant requests the transfer voucher, NYCHA will approve the issuance of a transfer voucher without that person included in the household composition.  Once a tenant identifies a new apartment, the tenant must submit a rental package, including required documentation regarding members in the household.  If the tenant fails to provide documentation regarding a person whom the tenant wishes to be added to the household, the tenant will be issued a voucher with a payment standard appropriate for the tenant's authorized household size. NYCHA will inspect the apartment within four weeks of receiving a request for inspection from the landlord.  Upon request of the landlord or the tenant to its Customer Contact Center, NYCHA shall provide the result of the inspection.  If the apartment passes inspection, NYCHA will issue a move-in letter within three weeks of the inspection.  NYCHA will retain an independent auditor who will issue a report every three months to counsel for both Parties as to the degree to which NYCHA complied with the new policies and procedures.  The Court will retain jurisdiction to enforce the settlement for 30-42 months after approval of the settlement. This time period is designed to allow the Court to determine not only whether the terms of the settlement have been adequately implemented, but whether the changes made have been sustained over time.

On January 31, 2014, this Court entered an Order preliminarily certifying the settlement class, preliminarily appointing the Legal Aid Society and Latham and Watkins, LLP as class counsel, scheduling a fairness hearing for March 20, 2014, and authorizing notice of hearing to be provided to members of the plaintiff class. (Docket No. 28.)

On March 19, 2014, Plaintiffs' counsel informed the Court that they had inadvertently failed to post the Court-approved Notices on their websites, in Legal Aid Society's waiting rooms, and in Housing Courts in all five boroughs. (Docket No. 30.) The Parties appeared before the Court on March 20, 2014, and the Court adjourned the fairness hearing to April 21, 2014 to give the Parties more time to disseminate Notice. On March 21, 2014, the Court entered an Order preliminarily certifying the settlement class, preliminarily appointing the Legal Aid Society and Latham and Watkins, LLP as class counsel, scheduling a fairness hearing for April 21, 2014, and authorizing notice of hearing to be provided to members of the plaintiff class. (Docket No. 32.)

Pursuant to the Court's March 21, 2014 Order, NYCHA posted copies of the Court-approved notice at its Customer Contact Centers and on its website. (Doc. No. 35 at 4.) Plaintiffs' counsel posted copies of the Court-approved notice on their websites and in the waiting rooms of the Legal Aid Society's neighborhood offices. (*Id.*) In addition, the notice was posted in the Housing Courts in all five boroughs. (*Id.*) No objections to the settlement were received. (*Id.*) The Court-approved notice informed Class Members of their rights under the settlement, including the right to object to the settlement. No class members objected to the settlement. (*Id.*) On April 16, 2014, Plaintiffs filed a request for final approval of the settlement. (*Id.*) Defendants took no position with respect to the motion and did not object to the Plaintiffs' requests for attorneys' fees.

The Court held a fairness hearing on April 21, 2014.  Defendants did not appear at the fairness hearing. On April 21, 2014, Defendants informed the Court that they had failed to appear as a result of a calendaring error, and, in any event, "agree[d] with plaintiffs' counsel that the settlement is reasonable and fair to all members of the class." (Docket No. 36.)  There were no objections at the fairness hearing.

### III.   DISCUSSION

Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(2). Courts in the Second Circuit have consistently upheld class actions as "an appropriate method of obtaining relief in benefits cases" where the class seeks relief from unreasonable delay and/or withholding of government benefits. *Morel v. Giuliani*, 927 F. Supp. 622, 634 (S.D.N.Y. 1995); *see, e.g., Barnett v. Bowen,* 794 F.2d 17, 22 (2d Cir. 1986) (certifying class seeking relief for delays in receipt of disability benefits); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 202-05 (E.D.N.Y. 2005) (certifying class of mentally disabled individuals seeking relief for defendant's unlawful withholding and/or conditioning the distribution of disability benefits); *Raymond v. Rowland*, 220 F.R.D. 173, 175 (D. Conn. 2004) (certifying class of disabled individuals entitled to subsistence benefits through Food Stamps, Medicaid, and other government programs seeking relief from delays in processing benefits and the denial of benefits"); *Nat'l Law Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314, 317-26 (E.D.N.Y. 2004) (certifying class of homeless children seeking relief from the systematic failure to receive educational services that they are entitled to under federal law). "[T]he use of the class action device on behalf of recipients of government benefits is a common and necessary means of challenging unfair statutes, regulations and policies in an area where the individual claimant is unlikely to bring suit because of poverty and the

inaccessibility of judicial relief as an economic matter. *Matyasovszky v. Hous. Auth. of Bridgeport*, 226 F.R.D. 35 (D. Conn. 2005) (quoting 7 Newberg on Class Actions § 23:1 (4th ed.)).

### 1. Numerosity

Plaintiffs satisfy the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1) because there are approximately 4,500 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members."). The Second Circuit has held that a prospective class of forty members raises a presumption of numerosity. *See Marisol A.*, 126 F.3d at 376; *Robidoux*, 987 F.2d 931, 936 (2d Cir. 1993) (finding numerosity satisfied upon a showing of 22 to 133 affected cases each month); *see also Toure v. Cent. Parking Sys.* 2007 U.S. Dist. LEXIS 74056, 2007 WL 2872455, * 6 (S.D.N.Y Sept. 28, 2007) (certifying a class of forty-six members). The Plaintiff class includes many individuals who will become members of the class over time as they request emergency transfer vouchers. The immeasurable number of future plaintiffs makes the class so numerous that joinder is impracticable.

### 2. Commonality

The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. The Named Plaintiffs and the Class Members share common issues of fact and law, including whether Defendants' failure to timely process their requests to transfer apartments violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the Housing Act and its implementing regulations, and NYCHA's own policies. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a

policy of not paying all class members overtime pay). The Plaintiffs' claims and those of the putative class members arose out of NYCHA's prior policies and procedures regarding the issuance of emergency transfer vouchers. Though there were variations in the individual named Plaintiffs' particular circumstances surrounding their requests for emergency transfer vouchers, the injury alleged because of Defendant's delay manifested itself in substantially the same way. As this Court recently stated, "[w]here the question of law involves 'standardized conduct of the defendant to the plaintiff, a common nucleus of operative fact is typically presented and the commonality requirement is usually met.'" *Lewis*, 2012 U.S. Dist. LEXIS at *25 (quoting *Labate-D'Alauro v. GC Servs. Ltd. P'ship.*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996)). Factual differences among the claims of class members do not preclude a finding of commonality. *See, Marisol A.,* 126 F.3d at 377 (holding that while it is true that individual circumstances of class members may differ, the claim is "that their injuries derive from a unitary course of conduct by a single system"). *See also, Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001).

When the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed. *Nat'l Law Center on Homelessness and Poverty*, 224 F.R.D. at 324; *see, e.g., Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of New York and New Jersey*, 698 F.2d 150, 154 (2d Cir. 1983) (holding that certification had been improperly denied where plaintiffs challenged a practice of defendants, as opposed to defendants' conduct with respect to each individual plaintiff); *Daniels*, 198 F.R.D. at 418 ("[B]ecause the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional practice or policy . . . the commonality requirement is satisfied"); *Raymond*, 220 F.R.D. at 179 (D. Conn. 2004) (systematic practice of failing to provide reasonable accommodations in a public benefits

8

program was sufficient to establish commonality); *Ray M. v. Bd. of Educ.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) ("[B]ecause the named plaintiffs 'are challenging a *practice* of [defendants], and not [defendants'] conduct with respect to the individual plaintiffs, they have satisfied Rule 23(a)'s commonality requirement") (internal citation omitted) (emphasis in the original). The plaintiff class here sought only declaratory and injunctive relief and the stipulation of settlement provides for changed policies: thus, compliance with Rule 23(a)(2) is presumed. Plaintiffs challenged the Housing Authority's systematic practices in evaluating and responding to emergency transfer requests, notifying participants of the status of such requests, and scheduling inspections of prospective apartments. The challenged practices presented common legal and factual questions well suited for certification under Rule 23.

### 3. Typicality

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because the Named Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Morris*, 859 F. Supp. 2d at 616; *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir. 1982). The named Plaintiffs' claims arose from the same conduct by the Housing Authority—unreasonable delay in processing emergency transfer requests and improper requests for certification of rent payments—also directed at prospective members of the class. Plaintiffs asserted the delay of their transfer requests violated the Housing Act, federal regulations, and their due process rights; these claims were premised on the same legal theories as the claims of the rest of the plaintiff class. Moreover, "[i]n government benefit class actions, the typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation or policy as class members." *Matyasovszky,* 226 F.R.D. at 35 (D. Conn. 2005) (citing Newberg § 23:4). *See, Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the

same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."). The named Plaintiffs challenged, and were all subject to, the same policies and practices that were applied to the absent class members. Plaintiffs also satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Named Plaintiffs' and the Class Members' interests are at odds. *Id.* at 616; *Johnson v. Brennan*, No. 10cv4712 (CM), 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011).

### 4. Adequacy of Representation

Plaintiffs' counsel, the Legal Aid Society and Latham and Watkins, LLP, will adequately represent the interests of the Class. Fed. R. Civ. P. 23(a)(4). Under Rule 23(a)(4), two factors are necessary to satisfy the adequacy of representation requirement: (1) the interests of the named plaintiffs cannot be antagonistic to the rest of the class, and (2) plaintiffs' counsel is competent to handle the litigation." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 291. Both requirements were met in this case.

To establish the first prong of Rule 23(a)(4), the Plaintiffs must 'demonstrate that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class.'" *Nat'l Law Ctr. on Homelessness & Poverty*, 224 F.R.D. at 325 (quoting *Marisol A.*, 126 F.3d at 378).When named plaintiffs seek broad-based relief that would improve the quality of services to class members, the first prong is satisfied. *See, Marisol A.*, 126 F.3d at 378. The Plaintiffs in this action sought broad-based injunctive relief, to compel the Housing Authority to issue transfer vouchers within a reasonable time. They obtained through the stipulation of settlement a systematic improvement of the Housing Authority's policies and procedures related to the issuance of emergency transfer vouchers benefits. The named Plaintiffs benefitted from these

10

changes to the same extent as the absent and future class members. Thus, named Plaintiffs'

interests are aligned with the interests of the other class members, rendering them adequate

representatives.

The class satisfies the second prong of Rule 23(a)(4) because the collective class

counsel have adequately represent the class. Plaintiffs are represented by The Legal Aid

Society and Latham & Watkins LLP. The Legal Aid Society "enjoys a wide reputation for

the devotion of its staff and the quality of its service." *Blum v. Stenson*, 465 U.S. 886, 891

n.3 (1983). Latham & Watkins LLP is a private law firm with substantial resources and

with experience in litigating complex class-action claims. (Doc. No. 38)

**B.    Class Action Maintenance**

Plaintiffs satisfy the requirements for certification pursuant to Rule 23(b)(2). "In addition

to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the

action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S.

591, 614 (U.S. 1997). Rule 23(b)(2) specifically contemplates class certification of actions

seeking injunctive relief. *Marisol A.*, 126 F.3d at 378. Under Rule 23(b)(2), a class action is

appropriate where "the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole". Fed. R. Civ. P. 23(b).

Civil-rights actions are particularly appropriate for certification under Rule 23(b)(2).

*See* Advisory Committee's Notes on Fed. R. Civ. P. 23 (1966). "Cases of this nature,

alleging systemic failure of governmental bodies to properly fulfill statutory requirements,

have been held to be appropriate for class certification under Rule 23(b)(2)." *Raymond*,

220 F.R.D. at 181 (citing *Brown*, 158 F.R.D. at 269). Class certification "is

11

appropriate…as the allegations specify conduct by Defendant directed at the class as a whole, and injunctive relief would be appropriate with regard to the class as a whole." *Id.* Indeed, a plaintiff class seeking "classwide structural relief that would clearly redound to the benefits of each class member" is the "paradigmatic Rule 23(b)(2) class action." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979), *vacated on other grounds, Lombard v. Marcera*, 442 U.S. 915 (1979); *McCoy v. Ithaca Housing Authority*, 559 F. Supp. 1351 (N.D.N.Y 1983).

Class certification is appropriate where, as here, "the allegations specify conduct by Defendant directed at the class as a whole, and injunctive relief would be appropriate with regard to the class as a whole." *Raymond*, 220 F.R.D. at 81. Specifically, courts in this Circuit have repeatedly certified class actions brought by low-income individuals against a public housing authority seeking injunctive relief for policies and practices that violate federal law and regulations that operate to deny the class members housing assistance they are otherwise qualified to receive. *See, e.g., Maziarz*, 2012 U.S. Dist. LEXIS 24791 (D. Conn. 2012); *Cason v. Rochester Hous. Auth.*, 748 F. Supp. 1002, 1009-10 (W.D.N.Y. 1990); *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233 (S.D.N.Y. 1989); *Bruce v. Christian*, 113 F.R.D. at 554; *James v. New York City Hous. Auth.*, 622 F. Supp. 1356 (S.D.N.Y. 1985).

Similarly, this action is particularly well-suited for certification as a class action. The Plaintiffs sought declaratory and injunctive relief to ensure the Housing Authority's policies and practices complied with federal and regulatory law and with its own administrative policies. The relief in the Stipulation of Settlement includes new policies for processing all of the class-members emergency transfer requests . *See*, *Raymond*, 220

12

F.R.D. at 181. Therefore, Rule 23(b)(2) treatment is particularly appropriate in this action.

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Reyes v. Altamarea Grp., LLC*, No. 10cv6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). The Named Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste, delay, and repetitive proceedings and by preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action against automobile company for defective latches superior when individual claims would burden judiciary and when high litigation costs relative to potential relief would disincentivize individual plaintiffs from bringing claims); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

C.    **Approval of Settlement Agreement**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be

13

hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06cv13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05cv10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02cv8238 (DLC), 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

### 1.    Procedural Fairness

The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Reyes*, 2011 WL 4599822, at *4. The settlement was reached after the Parties engaged in discovery and conducted extensive arms-length settlement negotiations. (Doc. No. 35 at 6.) The negotiations were vigorously contested "at almost every stage of the process." (*Id.*) The Parties appeared before the undersigned for three settlement conferences, on February 24, 2013, April 25, 2013, and May 20, 2013. (Minute Entry, Feb. 24, 2013; Minute Entry, Apr. 25, 2013; Minute Entry, May 20, 2013.) The Parties' arm's-length settlement negotiations involved counsel, and several occurred before the undersigned, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart*

14

*Stores*, 396 F.3d at 116; *In re Penthouse Executive Club Comp. Litig.*, No. 10cv1145 (KMW),
2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with the help of
third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of
due process.") (internal quotation marks and citation omitted); Reyes, 2011 WL 4599822, at *4.

   In addition, courts encourage early settlement of class actions, when warranted, because
early settlement allows class members to recover without unnecessary delay and allows the
judicial system to focus resources elsewhere. *See Castagna v. Madison Square Garden, L.P.*,
No. 09cv10211 (LTS)(HP), 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending
Plaintiffs' attorneys for negotiating early settlement); *In re Interpublic Sec. Litig.*, No. 02cv6527
(DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be
encouraged when warranted by the circumstances of the case). The parties here acted
responsibly in reaching an early settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re
Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

   2.   **Substantive Fairness**

   To determine if a settlement is substantively fair, courts consider the factors set forth in
*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). The *Grinnell* factors are: (1) the
complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the
stage of the proceedings and the amount of discovery completed; (4) the risks of establishing
liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action
through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range
of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range
of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks
of litigation. *Id.* at 463. Because this case does not involve a settlement fund, there is no need to

15

examine the last three *Grinnell* factors. *See Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006); *Marison A. v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y. 1999) ("The Court will not examine the last three [*Grinnell*] criteria as they are applicable only in actions for damages . . . ."). Additionally, for the fifth factor, the court will evaluate the risks of establishing remedies, instead of the risks of establishing damages. *Giuliani*, 185 F.R.D. at 162. For the reasons which follow, the applicable factors set forth in *Grinnell* weigh in favor of final approval.

### a. Complexity, Expense, and Likely Duration of Litigation

Litigation through trial would be complex, expensive and long. A trial would have involved a class-wide examination of NYCHA's policies and procedures and a complex set of factual and legal issues, as well as considerable expense and time. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### b. Class Reaction to Settlement

The Class's reactions to the settlement has been positive. The Notices posted at the Housing Authority's Customer Contact Centers and Legal Aid Society's neighborhood offices as well as on the Housing Authority's website and the websites of Plaintiffs' counsel included an explanation of the settlement. (Docket No. 32, Ex. A.) The Rule 23 Notice also informed Rule 23 Class Members of their right to object to the Settlement and explained how to do so. (*Id.*) No Class Member has objected to the Settlement. (Doc. No. 35 at 4.) This favorable response demonstrates that the class approves of the Settlement and supports final approval. *See Willix v. Healthfirst, Inc.*, No. 07cv1143 (ENV)(RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class member submitted timely objections and two requested exclusion); *Khait v. Whirlpool Corp.*, No. 06cv6381 (ALC), 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members objected and two opted out

demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### c. Stage of Proceedings and Discovery Completed

The Parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). The amount of discovery does not matter as much as "the familiarity of counsel for all parties with the facts of the case . . . ." *Heyer v. New York City Hous. Auth.*, 80cv1196 (RWS), 05cv5286 (RWS), 2006 WL 1148689, at *3 (S.D.N.Y. Apr. 28, 2006). In this case, the parties have a detailed understanding of the factual and legal issues involved. Therefore, the third *Grinnell* factor weighs in favor of final approval.

### d. Risks of Continuing Litigation

The fourth, fifth, and sixth factors set forth in *Grinell,* the risk of establishing liability, the risk of establishing remedies, and the risk of maintaining the class action through trial, collectively relate to the risks and benefits to the plaintiffs of maintaining this action through trial. *See Wal–Mart Stores, Inc., 396 F.3d at 118 Padro v. Astrue,* No. 11cv1788 (CBA), 2013 WL 5719076, at *6 (E.D.N.Y. Oct.18, 2013). On these issues, a court should "assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 459 (S.D.N.Y. 2004). *U.S. v. New York,* 2014 WL 1028982 (E.D.N.Y. 2014).

The risk of establishing liability and the necessary remedies weighs in favor of final

approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03cv8698 (SAS)(KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and remedies. To establish a violation of the Due Process clause, Plaintiffs had to establish that NYCHA's actions resulted in termination of Plaintiffs' subsidies without prior notice and without the opportunity for a pre- or post-termination hearing. *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 613 (S.D.N.Y. 2005). To establish a violation of the Supremacy Clause, Plaintiffs had to establish that NYCHA's policies were an obstacle to the accomplishment and execution of the purposes and objectives of the Housing Act. *Wachovia, N.A. v. Burke*, 414 F.3d 305, 313-14 (2d Cir. 2005). Among other violations of the Housing Act alleged, Plaintiffs had to establish that Defendants unlawfully terminated their subsidies. 24 C.F.R. § 982.552. Additionally, Plaintiffs had to establish that Defendants violated NYCHA policies, including NYCHA's alleged policy of processing all emergency requests for transfer vouchers within six weeks of the request. (Compl. ¶ 94.) The proposed settlement eliminates these uncertainties while addressing all of the issues Plaintiffs sought to remedy in commencing this action. (Doc. No. 35.) Even if Plaintiffs successfully established liability, Plaintiffs would have faced difficulties demonstrating the necessity of the remedies sought, which included declaratory and injunctive relief. The possibility of achieving additional relief over and above that afforded by the negotiated relief does not outweigh the benefits of the Settlement. These factors therefore weigh in favor of final approval.

The risk of obtaining class certification and maintaining it through trial is also present.

Contested class certification motions would likely require extensive discovery and briefing. Defendants might challenge class certification by arguing that individualized questions preclude class certification. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Plaintiffs' Settlement eliminates the risk, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

**D.     Dissemination of Notice**

Pursuant to the Preliminary Approval Order, Defendants posted Court-approved Notices in English and Spanish in the public client waiting areas in NYCHA's Customer Contact Centers and on NYCHA's website, and Plaintiffs posted Court-approved Notices in English and Spanish in Legal Aid Society's waiting rooms, on Plaintiffs' counsel's websites, and in the Housing Courts of each New York City borough. (Doc. No. 35 at 4.) No objections to the settlement were received.

The Court finds that the Rule 23 Notices fairly and adequately advised Class Members of the terms of the Settlement, as well as the right of Rule 23 Class Members to object to the Settlement, and to appear at the fairness hearing conducted on April 21, 2014. The Class Members were provided with the best notice practicable under the circumstances. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

## III. CONCLUSION

The "Effective Date" of the settlement shall be five business days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 7th day of November 2014
New York, New York

The Honorable Ronald L. Ellis
United States Magistrate Judge

20